UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RONY PIERRE, on behalf of himself
and those similarly situated,

       Plaintiff,

v.                                     CASE NO. 3:12-cv-343-J-34JBT

VENUS SATELLITE, INC., a Florida
for Profit Corporation,

       Defendant.
_____/

## REPORT AND RECOMMENDATION[1]

    **THIS CAUSE** is before the Court on Plaintiff's Motion for Default Final Judgment ("Motion") (Doc. 47), filed and served on Defendant on August 12, 2013 (*id.* at 8). In the Motion, Plaintiff seeks entry of default judgment against Defendant pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. (*Id.*) To date, Defendant has not responded to the Motion; therefore, the undersigned will treat the Motion as unopposed. For the reasons stated herein, the undersigned recommends that the Motion be **GRANTED**.

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); M.D. Fla. R. 6.02(a). "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1).

## I.    Background

Plaintiff filed this lawsuit against Defendant Venus Satellite, Inc. ("VS") on March 28, 2012, seeking unpaid overtime compensation, liquidated damages, declaratory relief, and other relief under the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. § 216(b).  (Doc. 1.)  On May 25, 2012, Defendant answered the Complaint.  (Doc. 10.)

On November 9, 2012, the Court entered an Order granting the Amended Motion to Withdraw as Attorneys of Record for Defendant (Doc. 20), and directing VS to "either employ new counsel who shall file a notice of appearance with the Court on or before December 10, 2012, or file a notice with the Court by the same date, indicating that it is unable to obtain new counsel."  (Doc. 26 at 3.)  In that Order, the Court also set out the general rule that a corporation cannot appear *pro se* and must be represented by counsel, which VS acknowledged.  (*Id.* at 2-3.)  A copy of that Order was served on VS and its President Akhdiyar Ayupov via certified mail (return receipt requested) and United States mail on November 13, 2012, as well as via e-mail on November 12, 2012.  (Doc. 27.)

Because VS did not comply with that Order, on December 14, 2012, the Court entered an Order, stating that a default may be appropriate in light of VS's inability to represent itself in this matter, and giving Plaintiff until December 28, 2012 to file an appropriate motion or advise the Court how he intended to proceed against VS. (Doc. 28.)  A copy of the December 14, 2012 Order was served on VS and its

President by first class mail. (*See id.* at 2.) In response to that Order, on December 21, 2012, Plaintiff filed a Motion for Court's Default pursuant to Fed. R. Civ. P. 55, based on VS's failure to obtain new counsel. (Doc. 29.) The Motion for Court's Default was served on VS via first class mail. (*Id.* at 3.)

By a "Notice" mailed to the Court on December 27, 2012, Mr. Ayupov responded to the Court's November 9, 2012 Order. (*See* Doc. 31.) The Notice provided, in relevant part, that "the corporation cannot retain new [sic] for this lawsuit."[2] (*Id.*) The Notice was filed on the docket on January 7, 2013. (*Id.*)

On January 7, 2013, the Court entered an Order granting the Motion for Court's Default, and giving Plaintiff until February 8, 2013 to move for a default judgment. (Doc. 30.) A copy of the January 7, 2013 Order was served on VS and its President by first class mail. (*See id.* at 4.) On January 8, 2013, the Clerk of Court entered a default against VS. (Doc. 32.)

On February 22, 2013, after obtaining an extension of the deadline for filing a motion for default judgment (*see* Doc. 34), Plaintiff filed his first Motion for Default Final Judgment, seeking a default judgment against VS in the amount of $36,600.00 for actual and liquidated damages, and $415.00 in costs (Doc. 36). On April 4, 2013, the Court entered an Order denying that motion without prejudice to filing and serving an amended complaint on or before April 24, 2013. (Doc. 37.) The Court

---

[2] The Notice also stated: "I can only tell the court that because the Plaintiff was a subcontractor not an hourly employee. His claim for overtime is untrue." (Doc. 31.)

noted that "the jurisdictional allegations of the Complaint are too conclusory and contain too few facts to support a default judgment." (*Id.* at 1.) A copy of the April 4, 2013 Order was served on VS and its President by first class mail. (*See id.* at 11.)

On April 26, 2013, Plaintiff filed an Amended Complaint & Demand for Jury Trial ("Amended Complaint") (Doc. 38). Plaintiff served the Amended Complaint on Defendant on May 8, 2013 and filed a Motion for Clerk's Default on June 5, 2013, which was served on VS by first class mail. (*See* Docs. 41-1, 42, 44-1, 45.) On July 12, 2013, the Clerk of Court entered a default against VS. (Doc. 46.) On August 12, 2013, Plaintiff filed and served the present Motion, seeking a default judgment against VS in the amount of $36,600.00 for actual and liquidated damages, and $410.00 in costs. (Doc. 47.)

## II.    Standard

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. First, when the defendant fails to plead or otherwise defend the lawsuit, the clerk of court is authorized to enter a clerk's default against the defendant. *See* Fed. R. Civ. P. 55(a). Second, and in general, after receiving the clerk's default, the court, or in some instances the clerk, may enter a default judgment against the defendant for not appearing. *See* Fed. R. Civ. P. 55(b).

The law is well settled that through its default, a defendant "admit[s] [a] plaintiff's well-pleaded allegations of fact . . . ." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *see also Patray v. Nw. Publ'g., Inc.*,

931 F. Supp. 865, 869 (S.D. Ga. 1996). However, "a defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu*, 515 F.2d at 1206; *see also Patray*, 931 F. Supp. at 868 (noting that a motion for default judgment "is not granted as a matter of right, and in fact is judicially disfavored"); *Pitts v. Seneca Sports, Inc.*, 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004) (stating that "[a] motion for default judgment is not granted as a matter of right"). Indeed, a sufficient basis must exist in the pleadings for the judgment entered. *See Nishimatsu*, 515 F.2d at 1206. A defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.* *See also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (stating that "facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment").

Rule 8 provides that a complaint must include (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for relief. *See* Fed. R. Civ. P. 8(a). A complaint meets the requirements of Rule 8, if in light of the nature of the action, the complaint provides factual allegations, which are assumed to be true, sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face.").

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth." *Iqbal*, 129 S. Ct. at 1949, 1951. Thus, in ruling on a motion for default judgment, the Court must determine whether a sufficient factual basis exists in the complaint for a judgment to be entered. *See Nishimatsu*, 515 F.2d at 1206.

### III. Discussion

#### A. Subject Matter Jurisdiction

"In a given case, a federal district court must have at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Baltin v. Alaron Trading, Corp.*, 128 F.3d 1466, 1469 (11th Cir. 1997).

The jurisdictional section of the Amended Complaint alleges that "[t]his Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1337 and the FLSA," and that "[t]he Court has the authority to grant declaratory relief pursuant to the FLSA and the federal Declaratory Judgment Act ('DJA'), 28 U.S.C. §§ 2201-02."

(Doc. 38, ¶¶ 5-6.)

Upon review of these allegations, the undersigned recommends that Plaintiff has sufficiently alleged subject matter jurisdiction. Under 28 U.S.C. § 1337, "[t]he district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce . . . ." 28 U.S.C. § 1337. This action is clearly covered by 28 U.S.C. § 1337 because it arises under the FLSA. (*See* Doc. 38 at 1-4.) Pursuant to the FLSA, an action to recover, *inter alia*, unpaid overtime compensation "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction." 29 U.S.C. § 216(b).[3]

## B.   Claim for Which Relief May Be Granted

Although the Court previously found that the "allegations of the Complaint are too conclusory and contain too few facts to support a default judgment" (Doc. 37 at 1), the undersigned recommends that the Amended Complaint adequately corrects the deficiencies identified in the Court's April 4, 2013 Order, and, therefore, a sufficient basis exists for a default judgment to be entered.

To prevail on a claim for payment of overtime wages under the FLSA, Plaintiff must establish the following:

---

[3] The undersigned also recommends that Plaintiff has sufficiently alleged that venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1)-(2) & (c)(2). The Amended Complaint alleges, in relevant part, that Defendant's headquarters are located in Palm Coast, Flagler County, Florida, and "Plaintiff was a cable technician and performed related activities for Defendant in Flagler County, Florida." (Doc. 38 at ¶¶ 3-4.)

(1) Plaintiff was employed by the Defendant during the time period involved;

(2) Plaintiff was engaged in commerce or in the production of goods for commerce or was employed by an enterprise engaged in commerce or in the production of goods for commerce; and

(3) Defendant failed to pay Plaintiff the overtime pay required by law.

*See* Eleventh Circuit Civil Pattern Jury Instructions 4.14 (2013).

### 1. Plaintiff Sufficiently Alleges He Was Employed by Defendant.

The Amended Complaint sufficiently alleges that Plaintiff was employed by Defendant during the time period involved. Under the FLSA, an "employee" is "any individual employed by an employer," 29 U.S.C. § 203(e)(1), an "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), and the term "employ" "includes to suffer or permit to work," 29 U.S.C. § 203(g). Although these definitions are "broad," they do not "bring 'independent contractors' within the FLSA's ambit." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013).

> To determine whether an individual falls into the category of covered "employee" or exempted "independent contractor," courts look to the "economic reality" of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence. This inquiry is not governed by the "label" put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether "the work done, in its essence, follows the usual path of an employee."

*Id.* (internal citations omitted).

In applying the above-cited "economic reality" test, many courts have looked at the following factors as guides:

(1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;

(2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;

(3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;

(4) whether the service rendered requires a special skill;

(5) the degree of permanency and duration of the working relationship;

(6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 1311-12. "While these factors serve as guides, the overarching focus of the inquiry is economic dependence[.]" *Id.* at 1312. "Ultimately, in considering economic dependence, the court focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'" *Id.*

The Amended Complaint alleges that Plaintiff "was an employee of Defendant" (Doc. 38 at 1), in the capacity of "a cable technician and performed related activities for Defendant" from approximately August 15, 2008 through August 11, 2011 (*Id.* at ¶¶ 3, 22-23.) The Amended Complaint further alleges that:

14.    Defendant provides cable and satellite installation and repair services to cable and satellite providers nationwide.

15.    Defendant purports to contract with individuals to perform installation, repair, construction and supervisory work associated with monitoring the quality of those services.

16.    Defendant purports to call these individuals "independent contractors," not employees, thereby avoiding any obligation to pay

payroll taxes, workers' compensation insurance, health insurance, unemployment insurance, overtime, and other such benefits.

17.     These so-called independent contractors are required to show up at a specific time in the morning, and at such location are handed out specific orders with instructions as to specific work which must be done by that day or within a matter of hours, and each contractor is provided with specification books as to how each such installation, repair, or construction work is to be performed.

18.     All of the telecommunications equipment used by the plaintiff contractors must be picked up from a facility on Defendant's property where Defendant informs each contractor of the amount of equipment needed to perform the jobs for that day.

19.     Virtually all of the plaintiff contractors work well over forty (40) hours per week.  Typically, the plaintiff contractors work(ed) between fifty-five (55) and seventy (70) hours per week without overtime compensation.

20.     There is virtually no opportunity for the plaintiff contractors to work for any other cable companies or to perform any other telecommunications work while working as contractors for Defendant.

21.     Further, if Defendant or its cable providers are unsatisfied with work performed by plaintiff contractors, Defendant requires such contractors to go out and correct any deficiency, and to make any repairs and on such occasions the plaintiff contractors are not paid for their time working to correct such problems.

. . .

24.     Plaintiff was paid a "piece rate" salary in exchange for work performed.

25.     Specifically, Plaintiff's wages were based on the job performed, not the amount of hours worked whether Plaintiff worked more or less than forty hours.

(*Id.* at ¶¶ 14-21, 24-25.)

The undersigned recommends that the foregoing allegations sufficiently allege that Plaintiff was economically dependent on Defendant and that his work followed the usual path of an employee.  Plaintiff worked for Defendant for approximately

three years, he used Defendant's equipment, he followed Defendant's detailed instructions on how to perform the work, he worked 55 to 70 hours per week and thus had no or little opportunity to work for others, his only opportunity for additional profit came from performing more work rather than managerial skill, and the work performed was an integral part of Defendant's business of providing cable and satellite installation and repair services. Therefore, Plaintiff's specific plausible factual allegations sufficiently support the conclusion that he was employed by Defendant.

> **2. Plaintiff Sufficiently Alleges He Was Employed by an Enterprise Engaged in Commerce or in the Production of Goods for Commerce.**

With respect to the second element of a claim for overtime wages, Plaintiff must establish either (1) "individual coverage," meaning that the employee was "engaged in commerce or in the production of goods for commerce," or (2) "enterprise coverage," meaning that the employee was "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a); *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1265-66 (11th Cir. 2006).

In the Amended Complaint, Plaintiff proceeds under a theory of enterprise coverage. The term "enterprise" is defined in 29 U.S.C. § 203®. "Enterprise engaged in commerce or in the production of goods for commerce" is defined in 29 U.S.C. § 203(s)(1) as an enterprise that:

(A)(I) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and

(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) . . . .

29 U.S.C. §203(s)(1).

The Amended Complaint alleges that "Defendant provides cable and satellite installation and repair services to cable and satellite providers nationwide." (Doc. 38, ¶ 14.) It further alleges that:

7.     At all material times during the last three years (2009-2012), Defendant was an enterprise covered by the FLSA, and as defined by 29 U.S.C. § 203(r) and 203(s).
. . .
9.     At all material times during the last three years (2009-2012), Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of § 3(s)(1) of the Act.
10.     Defendant has had two or more employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials such as cable and telecommunication system receivers, wiring, tools, telephones, computers, pens, paper, office furniture, trucks and other equipment that previously moved in or had been produced for commerce.
11.     Upon information and belief, Defendant has had and has an annual gross volume of sales made or business done of not less than five hundred thousand dollars ($500,000.00), exclusive of excise taxes at the retail level which are separately stated during the last three years (2009-2012).
12.     Defendant employed two or more employees who were also

engaged in interstate commerce because the Defendant operated a customer support call center where multiple employees utilized telephone and internet services from out of state providers on a daily basis.

13.     In addition, Defendant's employees would also transact business with out of state financial institutions during the regular course of business by processing customer's credit card payments for the services we provided to them.

(*Id.* at ¶¶ 7, 9-13.)

The undersigned recommends that the above allegations provide a sufficient basis to establish that Defendant was an enterprise engaged in commerce. First, the Amended Complaint alleges that Defendant provides its services "nationwide." (*Id.* at ¶ 14.) Assuming the truth of that allegation, Defendant would clearly have been engaging in "commerce." *See* 29 U.S.C. § 203(b) (defining "commerce" as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof"); Eleventh Circuit Civil Pattern Jury Instructions 4.14 (2013) ("The term 'commerce' has a very broad meaning and includes any trade, transportation, transmission, or communication between any place within a state and any place outside that state."). Even aside from that allegation, the Amended Complaint alleges that Defendant had "employees handling, selling, or otherwise working on goods or materials such as cable and telecommunication system receivers, wiring, tools, telephones, computers, pens, paper, office furniture, trucks and other equipment that previously moved in or had been produced for commerce." (Doc. 38 at ¶ 10.)

Recently, in *Polycarpe v. E&S Landscaping Service, Inc.*, the Eleventh Circuit construed the "handling clause" of the FLSA in the context of six consolidated appeals involving defendants who were "principally local service providers to customers within the state of Florida." 616 F.3d 1217, 1219 (11th Cir. 2010) (per curiam).[4] The court initially recognized: "We have already noted, [the 'handling clause'] allowed the FLSA potentially to reach retail and service businesses that were otherwise locally focused." *Id.* at 1220.

In interpreting the handling clause, the court first rejected the "coming to rest" doctrine, *i.e.*, "the belief that interstate goods or materials can lose their interstate quality if the items have already come to rest within a state before intrastate purchase by a business." *Id.* at 1221. Second, the court defined "materials" as "tools or other articles necessary for doing or making something." *Id.* at 1224. Further, the court held that:

> Whether an item counts as "materials" will depend on two things: 1) whether, in the context of its use, the item fits within the ordinary definition of "materials" under the FLSA and 2) whether the item is being used commercially in the employer's business.

*Id.* at 1225-26. The court further elaborated that "for an item to count as 'materials' it must have a significant connection with the employer's commercial activity; the

---

[4] The "handling clause," as explained in *Polycarpe*, is "whether Defendant employers had employees (not necessarily Plaintiffs specifically) 'handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 616 F.3d at 1221 (citing 29 U.S.C. § 203(s)(1)(A)(I)).

business may not just somehow internally and incidentally consume the item." *Id.* at 1226.

The court synopsized its conclusion as follows:

Therefore, we conclude that for the purposes of the FLSA's handling clause, an item will count as "materials" if it accords with the definition of "materials"—tools or other articles necessary for doing or making something—in the context of its use and if the employer has employees "handling, selling, or otherwise working on" the item for the employer's commercial (not just any) purposes.

*Id.* at 1227.

Plaintiff has sufficiently alleged both of the above requirements in the Amended Complaint. Paragraph 10 of the Amended Complaint alleges that Defendant had employees working on receivers, wiring, tools, trucks, and other equipment that had moved in commerce. It is also a reasonable inference from the allegations that this work had "a significant connection with the employer's commercial activity," *id.* at 1226, of providing cable and satellite installation and repair services. Thus, the allegations of paragraphs 10, 11, and 14 alone sufficiently allege enterprise coverage. *See Ceant v. Aventura Limousine & Transp. Serv., Inc.*, 874 F. Supp. 2d 1373, 1378 (S.D. Fla. 2012) (stating that plaintiff's allegation that on "information and belief" defendant's gross annual revenues exceeded $500,000 was sufficient at the pleading stage, particularly since that information is in defendant's hands).

Moreover, paragraphs 12 and 13 strengthen Plaintiff's allegations of enterprise

coverage. *See Ceant*, 874 F. Supp. 2d at 1377-78 (rejecting defendants' argument that plaintiff needs to provide "super detailed factual allegations as to every facet of FLSA coverage"); *see also Brooks v. Amerinet Health Ctr. S. Daytona LLC*, 2013 WL 980296, *1 (M.D. Fla. Feb. 25, 2013) (recommending that "Defendant was . . . engaged in interstate commerce, in that Defendant's employees handled goods moved in or produced for interstate commerce such as healthcare products and equipment, and used the telephone or computers to place and accept business calls") (Report and Recommendation adopted by District Judge on Mar. 13, 2013); *Donald v. Park & Fly, LLC*, 2011 WL 6027014, *2 (M.D. Fla. Nov. 7, 2011) (finding a sufficient basis for enterprise coverage where plaintiff alleged "Defendant was an enterprise covered by the FLSA; its annual gross business was at least $500,000 for the last three years; it had two or more employees engaged in interstate commerce, such as handling or otherwise working on goods that had been moved in or produced for interstate commerce, driving and parking cars registered in multiple states throughout the United States, using supplies that had previously moved in commerce, accepting payment from customers using credit cards issued by out-of-state banks, using the telephone and computer to place or accept business calls for reservations and quotes, and using the U.S. mail") (Report and Recommendation accepted by District Judge on Dec. 5, 2011).

In conclusion, the undersigned recommends that Plaintiff has sufficiently alleged enterprise coverage.

### 3. Plaintiff Sufficiently Alleges Defendant Failed to Pay Him Overtime Wages.

Plaintiff also adequately alleges that Defendant failed to pay him overtime wages. Specifically, the Amended Complaint alleges that "Plaintiff and those similarly situated to him routinely worked in excess of forty (40) hours per week as part of their regular job duties," and "[d]espite working more than forty (40) hours per week, Defendant failed to pay Plaintiff and those similarly situated to him overtime compensation at a rate of time and one half their regular rate of pay for hours worked over forty in a workweek." (Doc. 38 at ¶¶ 26-27.)

Because Plaintiff has provided a sufficient factual basis to support his allegations that he was employed by Defendant during the relevant time period, that Defendant was a covered employer under the FLSA based on enterprise coverage, and that Defendant failed to pay the overtime pay required by law, and because the Court must deem the well-pleaded allegations of the Amended Complaint as true, the undersigned recommends that Plaintiff has established a claim for payment of overtime wages under the FLSA. Therefore, Plaintiff is entitled to a default judgment.

### C. Damages

"[A] judgment by default may not be entered without a hearing [on damages] unless the amount claimed is a liquidated sum or one capable of mathematical calculation." *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per

curiam).  *See also SEC v. Smyth*, 420 F.3d 1225, 1231 (11th Cir. 2005).  The undersigned recommends that an evidentiary hearing on the issue of damages is not necessary in this case because the record is sufficient to calculate the amount of damages.

Plaintiff seeks damages for unpaid overtime wages in the amount of $18,300.00 and liquidated damages in the amount of $18,300.00.  (Doc. 47.)  The undersigned will recommend that Plaintiff be awarded these amounts.

It is an employee's burden to prove, "with definite and certain evidence, that he performed work for which he was not properly compensated."  *Reeves v. Int'l Tel. & Tel. Corp.*, 616 F.2d 1342, 1351 (5th Cir. 1980), *implicitly overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-34 (1988).  "Inaccurate wage and hour information, however, is not always fatal to a claim for minimum wage or overtime compensation," and if "the inaccuracy is due to the employer's failure to keep adequate records as required by statute, imprecise evidence on quantum can provide a 'sufficient basis' for damages."  *Id.*

> In such a situation . . . an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.  The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence.  If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Id.* at 1352.

In the present case, there are no time records showing the number of hours worked by Plaintiff because Defendant has defaulted.[5] (*See* Doc. 12-1 at 2 ("Plaintiff is without sufficient pay and time records to accurately calculate damages . . . .").) As stated in Plaintiff's Motion, since "Defendant has failed to participate in this case, Plaintiff's Affidavit is the best evidence of the hours worked." (Doc. 47 at 6.)

Despite the lack of records, Plaintiff has shown that he performed work for which he was improperly compensated and he has shown the amount of that work. Specifically, Plaintiff's Affidavit provides that he worked "approximately sixty (60) hours per week," he "earned an average of $900.00 every week," he "was paid a piece rate method for each job or installation [he] performed," and based on the above he has determined that he is "owed approximately $18,300 ($900.00 per week/ 60 hours= $15.00 hourly rate/ 2= $7.50 half time rate [x] 20 hours per week= $150.00 unpaid wages per week [x] 122 weeks)" in actual damages.[6] (Doc. 47-1, ¶¶ 6-8.) In light of Defendant's default and failure to come forward with evidence to rebut this amount and show the precise amount of work performed by Plaintiff, the

_____

[5] Before withdrawing from the case, Defendant's counsel filed a Verified Summary of the amounts paid to Plaintiff; however, this document does not indicate the number of hours worked. (*See* Doc. 13-1.)

[6] The Amended Complaint alleges that Defendant was an enterprise covered by the FLSA "during the last three years (2009-2012)." (Doc. 38, ¶¶ 7, 9.) However, it alleges that Plaintiff was employed by Defendant "from approximately August 15, 2008 through August 11, 2011." (*Id.* at ¶ 23.) Despite this discrepancy, Plaintiff is seeking damages based on only 122 weeks of employment, which eliminates the period from August 15, 2008 through December 31, 2008.

undersigned recommends that Plaintiff should be awarded the full amount of damages sought for unpaid overtime wages, which equals $18,300.00.

Plaintiff should also be awarded liquidated damages in the amount of $18,300.00. Under the FLSA, "if the employer shows to the satisfaction of the court that the act or omission giving rise to [the] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216." 29 U.S.C. § 260. "Even if the district court determines that the employer's actions were taken in good faith and based on reasonable grounds, the district court still retains the discretion to award liquidated damages." *Heidtman v. County of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999).

In the present case, Plaintiff's Amended Complaint alleges that "Defendant knowingly, willfully, or with reckless disregard carried out its illegal pattern or practice of failing to pay overtime compensation with respect to Plaintiff and the class members," "Defendant did not act in good faith," and "[a]s a result of Defendant's willful violation of the FLSA, Plaintiff, and those similarly situated to him, is/are entitled to liquidated damages." (Doc. 38, ¶¶ 33-34, 40; *see also id.* at ¶ 39.) Since Defendant has failed to challenge Plaintiff's allegations, the undersigned recommends that an award of liquidated damages in an amount equal to the amount of damages for unpaid overtime wages is appropriate in this case. Therefore, the

undersigned will recommend that Plaintiff be awarded $36,600.00 for unpaid wages and liquidated damages.

### D.    Costs[7]

Plaintiff seeks costs in the amount of $410.00, which represents $350.00 for the filing fee and $60.00 for service of process.  (Doc. 47 at 7-8.)  As such costs are authorized by statute, *see* 29 U.S.C. § 216(b); *see also* 28 U.S.C. § 1920 (stating that filing fees and service fees are recoverable), the full amount of these costs is due to be awarded to Plaintiff.

### IV.    Conclusion

Based on the foregoing, the undersigned recommends that Plaintiff be awarded damages for unpaid overtime wages in the amount of $18,300.00, liquidated damages in the amount of $18,300, and costs in the amount of $410.00.

Accordingly, it is **respectfully RECOMMENDED** that:

1.    The Motion (**Doc. 47**) be **GRANTED**.

2.    The Clerk of Court be directed to enter judgment in favor of Plaintiff Rony Pierre and against Defendant Venus Satellite, Inc., in the amount of Thirty-

---

[7] The Motion provides that although 29 U.S.C. § 216(b) authorizes an award of attorney's fees and costs to a prevailing plaintiff, Plaintiff is not seeking any attorney's fees in this matter and is seeking only costs.  (Doc. 47 at 7-8.)  Since it is recommended that this case be decided on a motion for default judgment, the undersigned finds it appropriate to recommend that Plaintiff's waiver of fees be accepted and an award of attorney's fees not be included in the judgment.

Seven Thousand and Ten Dollars and No Cents ($37,010.00), terminate any pending motions, and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on October 11, 2013.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

Counsel of Record

Akhdiyar A. Ayupov, President
Venus Satellite, Inc.
6 Waves Place
Palm Coast, FL 32164

Venus Satellite, Inc.
160 Cypress Point Parkway
Suite A-201
Palm Coast, FL 32164